Terrance SWANSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–9910–CR–376

Court of Appeals of Indiana.

June 13, 2000.

Transfer Denied Sept. 5, 2000.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

Appellant, Terrance Swanson, appeals his conviction for Possession of Cocaine,[1] a class B felony. Swanson argues that the trial court erroneously denied his motion to suppress crack cocaine seized without a warrant. Although Swanson presents several arguments on appeal, we find one dispositive—whether the pat-down search was lawful. Because the record reveals that the only facts upon which the officers relied to conduct a pat down were Swanson's presence in an area known for drugs and Swanson having his hands in his pockets, the pat down was not lawful. As a result, the crack cocaine is inadmissible. We reverse.

### Facts and Procedural History

On April 21, 1998, Elkhart Police Officers Michael Stuff, Todd Thayer, Brian Prugh and Sergeant Mike Johnson were returning to the police station from bike patrol when they observed a vehicle pull into a parking place. Swanson, who had been driving, and his passenger exited the vehicle and placed alcoholic beverages on top of the car. Upon seeing the alcohol, all of the officers rode over to the vehicle to investigate potential alcohol violations. Officers Stuff and Prugh approached Swanson while the other two officers approached the passenger. Swanson, whose hands were in his pockets, was asked to remove them with the understanding that the officer was going to conduct a pat-down search of Swanson for weapons. Swanson complied with the request, removing his hands and placing them by his side. As he removed his hands, a small object dropped from his hand and landed on the ground next to his feet. Officer Stuff, who observed the object fall, then saw that the item was a two-by-two piece of brown paper bag, crumpled up in a ball. Although Officer Stuff was not able to identify the object, he knew it was not a weapon.

Before Officer Stuff seized the item, he allowed Officer Prugh to conduct a pat down of Swanson's outer clothing. Finding no weapons, Officer Prugh proceeded to ask Swanson for his driver's license and registration and began to question him about the alcohol. At that time, Officer Stuff picked up the piece of crumpled paper, opened it and observed four rock-like substances that appeared to be crack cocaine. The item was later subjected to testing which confirmed Officer Stuff's suspicion. Swanson was placed under arrest and subsequently charged with Possession of Cocaine within 1000 feet of a school, a class B felony.

On the morning of his jury trial, Swanson filed a motion to suppress, claiming that the stop, search and seizure violated the Fourth Amendment of the United States Constitution[2] and Article 1, Section

---

1. IND.CODE § 35–48–4–6.

2. The Fourth Amendment guarantees the "right of the people to be secure in their

11 of the Indiana Constitution.[3] Swanson also filed a motion in limine to prevent the State from referring to the crack cocaine during the trial. Because potential jurors were already present for jury selection, the trial court decided to proceed with the trial and delay hearing the motion until the officer who seized the crack cocaine testified. Thereafter, the jury was impaneled, preliminary instructions were read, and the jury was dismissed for the day. The court then conducted the hearing on the motions, which were denied. In its order denying relief, the court stated that if the motions were granted, the prosecution would cease and if the motions were denied, the record would be preserved and the cause would proceed. The trial continued the following day. During the State's case-in-chief, the crack cocaine was admitted without objection. Thereafter, Swanson was convicted as charged.

## Discussion and Decision

### I. Preservation of Error

■ Initially, we must address the State's argument that Swanson did not preserve his argument that the crack cocaine should have been suppressed. According to the State, the defendant waived his claim because he did not make a contemporaneous objection when the crack cocaine was introduced at trial. Swanson concedes that he did not object at trial but contends that the trial court assured him that his claim was preserved.

■ Generally, filing a motion to suppress or a motion in limine, without making a specific contemporaneous objection when the evidence is offered at trial, will not preserve error on appeal. *Wise v. State*, 719 N.E.2d 1192, 1197, 1199 (Ind. 1999). An exception exists where a trial court assures the defense that his objection has been preserved. *Vehorn v. State*, 717 N.E.2d 869, 872–73 (Ind.1999). Be-

cause Swanson concedes he did not object, our determination depends on whether the trial court sufficiently assured the defendant that his challenge to the admission of the crack cocaine was preserved without further objection.

In its order denying the motion to suppress, the trial court noted that the motion had been filed on the morning of trial and that potential jurors were already present to serve on the jury. As a result, the trial court concluded that in the interest of judicial economy, the trial should proceed and the motion heard out of the jury's presence immediately before the officer who seized the evidence testified. Record at 82. The trial court proceeded as indicated, swearing in the jury, reading preliminary instructions, dismissing the jury for the day and thereafter, conducting the suppression hearing before the State presented its case-in-chief the following morning. In its order denying the motion the trial court stated, "If the motion is granted, the prosecution would cease and that if the State [sic] denies the evidence, *the record has been preserved* and the cause will proceed." Record at 82 (emphasis added). Although the better practice is to make a contemporaneous objection, the trial court's order makes clear the defense's challenge to the evidence was preserved without further objection. Thus, Swanson did not waive his argument on appeal and we proceed with his arguments.

■ The Fourth Amendment protects against unreasonable search and seizure and requires a warrant before a search is conducted. *Berry v. State*, 704 N.E.2d 462, 464 (Ind.1998). If a search is conducted in the absence of a warrant, the State bears the burden of proving an exception to the warrant requirement. *Id.* at 465. Search and seizure violations under

persons, houses, papers, and effects, against unreasonable searches and seizures."

**3.** Article 1, Section 11 provides in relevant part that the "right of the people to be secure

in their persons, houses, papers, and effects against unreasonable search or seizure, shall not be violated."

Article 1, Section 11 of the state constitution are analyzed differently. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999). The State must show that, in the totality of the circumstances, the police behavior was reasonable. *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995). The provision is to receive liberal application to ensure that citizens of this state are free from unreasonable searches and seizures. *Id.*

■ In reviewing the denial of a motion to suppress, we look for substantial evidence of probative value that supports the trial court's decision. *Goodner v. State*, 714 N.E.2d 638, 641 (Ind.1999). We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Melton v. State*, 705 N.E.2d 564, 566 (Ind.Ct.App.1999).

## II. Investigatory Stop

■ Swanson first contends that the police officers did not have reasonable suspicion to conduct an investigatory stop. In particular, Swanson argues that at the time the officers approached him, there was no evidence that he had consumed alcohol, violated an open container law, or had been driving while intoxicated.

■ Under the federal constitution, an officer may briefly detain an individual if the officer observes unusual conduct which leads him to conclude, in light of his experience, that criminal activity is afoot. *See Kenner v. State*, 703 N.E.2d 1122, 1125–26 (Ind.Ct.App.1999) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *reh'g denied, trans. denied.* Reasonable suspicion must be based upon specific and articulable facts, not mere hunches. *Id.* This determination is made on a case by case basis. *Myers v. State*, 714 N.E.2d 276, 284 (Ind.Ct.App.1999), *trans. denied.* Under the Indiana Constitution, the detention must be reasonable and the analysis is similar to that set forth in *Terry. Baldwin*, 715 N.E.2d at 337. Reasonable suspicion will be found where the facts known to the officer and the reasonable inferences would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.*

The open container law provides that a person with a .04 blood alcohol level who, while the motor vehicle is in operation, knowingly allows a container, which has been opened, that has a broken seal or from which some of the contents have been removed, to be in the passenger compartment of the vehicle, commits a class B infraction. IND.CODE § 9–30–15–3. At the suppression hearing, Officers Stuff and Prugh testified that while they were returning from bike patrol, they observed a vehicle park and "as soon as the car stopped the passenger side door and driver's side door opened up and both occupants placed alcoholic beverage[s] on top of the car." Record at 198, 210. The beverages were not in a bag, thus reducing the likelihood that they had just been purchased and were merely being transported from a store. Thus, under the federal constitution, the officers had sufficient articulable facts with which to conclude that Swanson might have violated the open container law and were justified in detaining him for investigation. Similarly, under the state constitution the officers' actions were reasonable. That is, the facts known to the officers, and the reasonable inferences, would cause an ordinarily prudent person to believe that a violation of the open container law had occurred. Therefore, Swanson was lawfully detained for an investigation regarding the possible alcohol violation.

## II. Pat down

■ Next, Swanson contends that the police officers unlawfully conducted a pat down because they did not have sufficient facts to cause them to reasonably believe that he was armed and dangerous. Specifically, he argues that although he had his hands in his pockets when the officers approached and was in a "high-drug area," these facts alone are not sufficient to cause a reasonable officer to believe that Swanson carried a weapon. The State

responds that we need not address the lawfulness of the pat down because Swanson voluntarily abandoned the piece of paper and his expectation of privacy in the item before the pat down occurred. Thus, according to the State, any search and seizure of the paper could not have been tainted by an unlawful pat-down search. In the alternative, the State argues that there were sufficient articulable facts on which a reasonable police officer could have relied to conclude that Swanson was armed and dangerous.

 As the State suggests, abandoned property is not subject to Fourth Amendment protection. *Miller v. State*, 498 N.E.2d 53, 55 (Ind.Ct.App.1986), *reh'g denied, trans. denied.* Yet, even if Swanson abandoned the crack cocaine, if the decision to discard the item was caused by improper police conduct, the abandonment is not considered truly voluntary and the evidence is not admissible. *See id.* at 53 ("Abandoned property is not admissible into evidence if the abandonment was precipitated by illegal police conduct or the threat thereof."); *State v. Pease*, 531 N.E.2d 1207, 1211–12 (Ind.Ct.App.1988) (concluding that because improper frisk forced defendant to abandon drugs, evidence is inadmissible); *United States v. Simpson*, 944 F.Supp. 1396, 1404 (S.D.Ind. 1996) (finding that if there is a causal nexus between police misconduct and abandonment, evidence is not admissible under abandonment theory).

At the suppression hearing, Officer Prugh testified that he asked Swanson to remove his hands from his pockets and Swanson complied "with the understanding that [the officer] was going to do a search for weapons upon his outer clothing." Record at 215. While removing his hands, Swanson dropped the item in the street. Because the officer's order caused Swanson to abandon the crack cocaine, the only remaining question is whether the pat down was lawful.

 The prerequisites for conducting a lawful pat down have been set forth on numerous occasions. A police officer may conduct a pat-down search for weapons if the officer reasonably believes, based on specific reasonable inferences drawn from the facts in light of his experience, that the person is armed and dangerous. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996). The United States Supreme Court, in the companion case to *Terry v. Ohio*, made the following comments regarding the pat down:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of self-protective search for weapons, [the police officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Thus, generalized concerns of officer safety will not support a lawful frisk. *L.A.F. v. State*, 698 N.E.2d 355, 356 (Ind.Ct.App.1998). Stated another way, "[A]n individual stopped may not be frisked or patted down for weapons, unless the officer holds a reasonable belief that the particular individual is armed and dangerous." *Pease*, 531 N.E.2d at 1211.

At the suppression hearing, the following colloquy occurred regarding the pat down:

Q. Why did they pat down the defendant?

A. For officer safety ... in that area they were getting out of the vehicles and his hands [were] in his pockets and the kind of work that we get into is typically more dangerous than the regular patrolman – we're in high drug areas – ah—so it's just a common practice for us to pat down the people that were –

Q: So it's common practice in that area to pat down people for guns?

A. Right. For weapons.

Q. That's strictly based on – because of the area?

A. (Witness nods head).

\* \* \*

Q. Was there any other reason why you searched the individual?

A. Well, the fact that his hands [were] in his pocket. . . .

Q: Do you search anybody that has their hands in their pockets?

A: I usually do.

Q. Anybody, anywhere?

A. Not anybody, anywhere, but I would say ninety-five (95) percent of the people I come across, I do a quick pat down.

Record at 203–04.

 Initially, we note that we are extremely concerned with the officer's testimony that it is common practice to pat down all people in the "high drug area" and most people who have their hands in their pockets. Standard practice is not a permissible reason to conduct a pat down. *See Pease*, 531 N.E.2d at 1212. Further, even if the pat down in this case was conducted specifically because of the "high drug area" and Swanson having his hands in his pockets, these facts are not sufficient to cause a reasonable officer to fear for his safety under these circumstances.

Although Swanson was in an area known for drugs, there were no facts tending to show that Swanson was about to engage in a drug transaction or had previously engaged in drug transactions. Further, possessing alcoholic beverages does not necessarily indicate that a person possesses illegal drugs. Additionally, although Swanson had his hands in his pockets when the officers approached, there was no indication that he placed them there in reaction to the officers' approach or made any other furtive movements.

·There was no threat of possible violent behavior due to alcohol consumption as Officer Stuff testified that Swanson did not appear intoxicated. Record at 203. Finally, at all times Swanson was cooperative and complied with the officers' requests.

Certainly we acknowledge the safety concerns of officers who must patrol areas where drugs are pervasive. We also acknowledge that it is not uncommon for drug dealers to carry weapons. However, individuals who enter these "high drug areas" do not lose their Fourth Amendment protections; there must be something about the individual or the situation which causes the officer to reasonably believe that a certain individual carries a weapon. . Under these circumstances, an officer could not have reasonably believed that Swanson was armed and dangerous. Further, the officers' actions were not reasonable.

 The conclusion we reach is consistent with Supreme Court precedent. In *Sibron*, the companion case to *Terry*, the police ·officer observed the defendant speak with six to eight narcotics addicts over an eight-hour period. *Sibron*, 392 U.S. at 45, 88 S.Ct. 1889. Late in the evening, the defendant entered a restaurant, and sat down to eat when an officer approached him and asked him to step outside. *Id.* Outside, the officer made clear to the defendant that the officer was after the drugs he believed the defendant was carrying. *Id.* Thereafter, the defendant reached into his pocket. The police officer immediately reached into the same pocket and discovered envelopes containing heroin. *Id.* The Court concluded as follows:

> In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. [The officer's] testimony reveals no such facts. The suspect's mere act of talking with a number of known narcotics addicts over an eight-hour period no more gives rise

to reasonable fear of life or limb on the part of the police officer than it justifies an arrest for committing a crime. Nor did [the officer] urge that when [the defendant] put his hand in his pocket, he feared that he was going for a weapon and acted in self-defense.

*Id.* at 64, 88 S.Ct. 1889. Here, the facts are less compelling than those present in *Sibron.* Swanson had not associated with any drug addicts but was merely present in a "high drug area." Additionally, Swanson made no furtive movements, thereby making it even less likely that he was reaching for or concealing a weapon. The officers did not have reasonable suspicion to conduct the pat down. Therefore, the crack cocaine, which was discarded in anticipation of the unlawful police action, should have been suppressed. The trial court's order denying the motion to suppress is reversed.

Judgment reversed and remanded for proceedings consistent with this opinion.

SULLIVAN, J., and BAILEY, J., concur.