ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LaQuantis Johnson,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | June 23, 2015<br><br>Court of Appeals Case No.<br>49A05-1409-CR-409<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Peggy Ryan Hart,<br>Master Commissioner<br><br>Case No. 49G20-1311-FB-74491 |

**Brown, Judge.**

[1] LaQuantis Johnson appeals his conviction for unlawful possession of a firearm by a serious violent felon ("SVF"), a class B felony. Johnson raises one issue which we revise and restate as whether the trial court abused its discretion by admitting evidence obtained following a pat down of Johnson. We affirm.

## Facts and Procedural History

[2] On November 17, 2013, City of Lawrence Police Officer Ralph Bridgeforth was working as an off-duty security guard inside the Indianapolis Greyhound bus station and wearing a partial police uniform. At 2:00 a.m., Officer Bridgeforth observed Johnson and J.D. Sanders enter the main entrance of the bus terminal without luggage. Sanders was stumbling all over the place and showing signs of intoxication, and there was a general odor of alcohol coming from the area of Sanders and Johnson. Officer Bridgeforth motioned for Johnson and Sanders to approach him.

[3] Officer Bridgeforth detected a strong odor of alcohol coming from the general area of the men, and asked them for identification and whether they were traveling by bus to determine if they were trespassing. Both of the men said that they were not traveling by Greyhound. Sanders provided Officer Bridgeforth with identification, but Johnson stated that he did not have his identification with him and placed his left hand into his left front pants pocket.

[4] Johnson's act of placing his hand in his pocket increased Officer Bridgeforth's concern for his safety because of "the possibility that he could have had a weapon on him and that is how several officers are killed in this country every

year." Transcript at 33. Officer Bridgeforth asked Johnson at least two times to remove his hand from his pocket, but Johnson did not comply. Officer Bridgeforth took Johnson's left arm, ordered him to place his hands behind his back, and continued to do a pat down search for weapons.

[5] During the pat down, Officer Bridgeforth "felt what appeared to be a handgun" in Johnson's left waistband beyond his back and behind the pocket where Johnson had placed his hand. *Id.* at 32. He then placed Johnson in handcuffs and removed a .45 caliber handgun from him.

[6] On November 21, 2013, the State charged Johnson with unlawful possession of a firearm by an SVF, a class B felony, and disorderly conduct as a class B misdemeanor. On May 5, 2014, Johnson filed a motion to suppress evidence and asserted that the stop violated his right to privacy under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[7] On June 26, 2014, the court held a bench trial. During Officer Bridgeforth's testimony, defense counsel moved to suppress any evidence found as a result of the pat down search under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The court took the motion under advisement. After the State rested, defense counsel renewed his motion to suppress. Defense counsel conceded that he thought Officer Bridgeforth was "probably personally prudent in doing what he did that day," but that "[t]here's no particular reason to believe [Johnson] was armed

and dangerous which means the patdown wasn't appropriate . . . ." *Id.* at 62-63. The court took the matter under advisement.

[8] On July 9, 2014, the court found that the initial encounter was a proper investigatory stop and that the pat down was reasonable based upon the facts. The court also commented that it believed that Officer Bridgeforth's safety was threatened. The court admitted the evidence, ultimately found Johnson guilty of unlawful possession of a firearm by an SVF and not guilty of disorderly conduct, and sentenced him to eleven years in the Department of Correction with two years suspended.

## *Discussion*

[9] The issue is whether the court abused its discretion by admitting evidence of the handgun obtained following a pat down of Johnson. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. Also, we may affirm a trial court's decision to admit evidence seized as a result of a search based on any legal theory supported by the record. *Edwards v. State*, 724 N.E.2d 616, 620-621 (Ind. Ct. App. 2000), *trans. denied*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's

determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

[10] Johnson does not challenge the constitutionality of the initial encounter or investigatory stop. However, he does claim that the pat down was illegal under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[11] We begin by addressing the Fourth Amendment claim. Johnson argues that the officer's pat down was justified only by concern that Sanders was intoxicated and his refusal to remove his hands from his pockets after he failed to produce identification. Johnson asserts that Officer Bridgeforth agreed on cross-examination that he had no particular reason to believe that Johnson had a gun and no particular reason to believe that he had any contraband, and that the facts do not support a reasonable belief that he was armed and dangerous. The State argues that the trial court properly found that Officer Bridgeforth had a reasonable belief that his safety was threatened.

[12] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[13] In *Terry v. Ohio*, the United States Supreme Court held:

The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968) (footnote omitted). The Court permitted

a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27, 88 S. Ct. at 1883. The Court held that "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* In other words, the Court concluded that

where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others'

safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S. Ct. at 1884-1885.

[14] The Fourth Amendment allows privacy interests protected by the Fourth Amendment to be balanced against the interests of officer safety. *Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001) (citing *Terry*, 392 U.S. at 23-27, 88 S. Ct. at 1881-1883). "An officer's authority to conduct a pat-down search is dependent upon the nature and extent of his particularized concern for his safety and that of others." *Id.* (citing *Mitchell v. State*, 745 N.E.2d 775, 781 (Ind. 2001)).

[15] To the extent Johnson asserts that the pat down search was no more justified than in *Swanson v. State*, 730 N.E.2d 205 (Ind. Ct. App. 2000), *trans. denied*, we disagree. In that case, police observed Swanson, who had been driving, pull into a parking place, exit his vehicle, and place alcoholic beverages on top of the car. 730 N.E.2d at 207. An officer approached Swanson, whose hands were in his pockets, and asked him to remove his hands with the understanding that the officer was going to conduct a pat down search of Swanson for weapons. *Id.* Swanson complied with the request, removed his hands, and placed them by his side. *Id.* As he removed his hands, a small object dropped from his hand and landed on the ground next to his feet. *Id.* One of the officers observed the object fall, then saw that the item was a two-by-two piece of brown

paper bag, crumpled up in a ball. *Id.* Although the officer was not able to identify the object, he knew it was not a weapon. *Id.* Before the officer seized the item, he allowed another officer to conduct a pat down of Swanson's outer clothing. *Id.* The officer then picked up the piece of crumpled paper, opened it and observed four rock-like substances that appeared to be and later tested positive to be crack cocaine. *Id.* A jury convicted Swanson of possession of cocaine as a class B felony. *Id.*

[16] On appeal, this court held that presence in a "high drug area" and the defendant having his hands in his pockets were not facts sufficient to cause a reasonable officer to fear for his safety under the circumstances. *Id.* at 211. The court also observed that "although Swanson had his hands in his pockets when the officers approached, there was no indication that he placed them there in reaction to the officers' approach or made any other furtive movements." *Id.* The court stated there was no threat of possible violent behavior due to alcohol consumption as the officer testified that Swanson did not appear intoxicated. *Id.* The court also stated that Swanson was cooperative and complied with the officers' requests at all times. *Id.* The court concluded that, under the circumstances, an officer could not have reasonably believed that Swanson was armed and dangerous. *Id.*

[17] Unlike in *Swanson*, Johnson entered the Greyhound bus station at 2 a.m. with a stumbling and intoxicated Sanders, indicated that he was not traveling by Greyhound, and placed his hand in his pocket after he informed Officer Bridgeforth that he did not have his identification. Further, Johnson refused

Officer Bridgeforth's multiple commands to remove his hand from his pocket. Officer Bridgeforth testified that Johnson's act of placing his hand in his pocket increased his concern for his safety because of "the possibility that he could have had a weapon on him and that is how several officers are killed in this country every year." Transcript at 33.

[18] Johnson cites the following exchange from the cross-examination of Officer Bridgeforth:

> Q You didn't have any particular reason to believe that he had a gun or a weapon, is that correct?
>
> A Not that I know of. Correct.
>
> Q Okay. And you had no particular reason to believe that he had any contraband, substance, or anything of that nature, is that correct?
>
> A Well, I wouldn't know. So that's correct.
>
> Q Okay. You then proceeded to do your patdown search, is that right?
>
> A After asking him to remove his hands from his pockets twice, correct. Or at least twice.

*Id.* at 47. This testimony demonstrates only that Officer Bridgeforth did not know for certain that Johnson was armed. On direct examination, Officer Bridgeforth indicated that Johnson's act of placing his hand in his pocket after stating that he did not have an ID increased his concern for officer safety. When asked on cross-examination whether his level of concern was raised when Johnson put his hands in his pockets, Officer Bridgeforth answered affirmatively.

[19] Under the circumstances, we conclude that a reasonably prudent man would be warranted in the belief that his safety was potentially in danger, and we cannot say that the search violated the Fourth Amendment. *See Williams v. State*, 754 N.E.2d 584, 588 (Ind. Ct. App. 2001) (observing that, in spite of repeatedly being told to remove his hands from his pocket and waistband area, the defendant kept putting his hands in his pocket and holding that defendant's behavior warranted the officer's reasonable fear for his safety and the subsequent pat down search of the defendant), *trans. denied*.

[20] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[21] "Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006), *adhered to on reh'g*, 848 N.E.2d 278 (Ind. 2006). "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Id.* "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or

seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[22] Johnson asserts that only Sanders was believed to be intoxicated and that Officer Bridgeforth had no reasonable belief that he had committed any offense or was in possession of a firearm. He contends that the degree of intrusion on his ordinary activities was not insubstantial when Officer Bridgeforth grabbed his arm, ordered him to put his hands behind his back, and performed a pat down search for weapons in a public bus terminal. Lastly, he asserts that the extent of law enforcement needs was non-existent because the officer lacked reasonable suspicion that he was armed and dangerous.

[23] The State contends that the degree of suspicion that a violation had occurred was moderate, the degree of intrusion of an outer-clothing pat down is minimal, and that the extent of law enforcement needs was high in this situation.

[24] We begin by considering "the degree of concern, suspicion, or knowledge that a violation has occurred." *Litchfield*, 824 N.E.2d at 361. At 2:00 a.m., Johnson and Sanders entered the main entrance of the bus terminal without luggage, Sanders was stumbling all over the place and showing signs of intoxication, and there was a general odor of alcohol coming from the area of Sanders and Johnson. Officer Bridgeforth asked them for identification and whether they were traveling by bus to determine if they were trespassing, and Johnson and Sanders said they were not traveling by Greyhound. Johnson stated that he did

not have his identification with him and placed his left hand into his left front pants pocket. Johnson then refused multiple commands from Officer Bridgeforth to remove his hand from his pocket, all of which increased Officer Bridgeforth's concern for his safety. We conclude that the degree or concern, suspicion, or knowledge that a violation had occurred was high. Next, regarding the degree of intrusion, the record reveals that Officer Bridgeforth took Johnson's left arm, ordered him to place his hands behind his back, and continued to do a pat down search of him for weapons at 2:00 a.m. in the bus station. Under these circumstances, this degree of intrusion was not high. Finally, the extent of law enforcement needs was strong given the circumstances leading to the pat down. Under the totality of the circumstances, we conclude that the pat down was reasonable and did not violate Johnson's rights under Article 1, Section 11 of the Indiana Constitution.

### Conclusion

[25] For the foregoing reasons, we affirm Johnson's conviction.

Pyle, J., concurs.

Crone, J., dissents with opinion.

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LaQuantis Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>49A05-1409-CR-409 |

**Crone, Judge, dissenting**

[26] Being mindful that we not only must *articulate* the proper standard for reviewing the constitutionality of a patdown under the Fourth Amendment but also *adhere* to that standard, I respectfully dissent from the majority's decision to affirm Johnson's conviction.[1]

[27] The U.S. Supreme Court has repeatedly emphasized that in order "[t]o justify a

---

[1] Our supreme court has recently admonished this Court for correctly stating but incorrectly applying the proper standard of review. *See, e.g., Civil Commitment of T.K.*, 27 N.E.3d 271, 274 (Ind. 2015) (disapproving line of cases reciting but not applying clear and convincing standard of proof in civil commitment cases); *see also Brummett v. State*, 24 N.E.3d 965, 966 (Ind. 2015) (clarifying that standard when reviewing for fundamental error has not changed despite Court of Appeals' potentially confusing reference to standard "now" to be used when reviewing for fundamental error).

patdown … of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is *armed and dangerous*." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (emphasis added). "Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch[.]" *Crabtree v. State*, 762 N.E.2d 241, 246 (Ind. Ct. App. 2002). In other words, the suspicion must be particularized concerning the suspect, not merely a general concern about people with weapons. *Hill v. State*, 956 N.E.2d 174, 179 (Ind. Ct. App. 2011), *trans. denied* (2012).

[28] Officer Bridgeforth initiated the detention because he suspected that the obviously inebriated Sanders and the possibly inebriated Johnson were violating bus station policies[2] prohibiting loitering and intoxication.[3] With respect to Johnson specifically, there was no evidence that he was committing the crime of public intoxication. *See* Ind. Code § 7.1-5-1-3(a) (requiring a showing of breach of the peace, endangerment, harassment, annoyance, or alarm). He may or may not have been drinking and was simply walking through the bus station with his inebriated friend, without a ticket. This leaves me wondering why the officer did not merely admonish Johnson to leave the station and take

---

[2] To the extent that the State cites Johnson's lack of identification as an articulable fact supporting a patdown, we note the officer's testimony that the identification information was important in determining whether either of the two men was on the premises without having a ticket or otherwise "utilizing the services." Tr. at 46.

[3] The officer testified that Greyhound policy prohibits an intoxicated person from boarding a bus or even being inside the terminal.

Sanders with him.

[29] The issue comes down to whether Johnson putting his hand in his pants pocket and refusing to remove it created a reasonable suspicion that he was armed and dangerous. I think not. A hand in a pocket is not evidence that a person is armed and dangerous. The majority emphasizes Officer Bridgeforth's direct-examination testimony that his safety concern increased when Johnson placed his hand in his pocket.[4] When asked why his concern increased, the officer answered in terms of possibilities and general concerns: "Because of the possibility that he could have a weapon on him and that is how several officers are killed in this country every year." Tr. at 33. Notwithstanding, during cross examination, the officer agreed that he "didn't have any particular reason to believe that [Johnson] had a gun or a weapon." *Id*. at 47. I believe that the latter testimony more specifically addresses the Fourth Amendment standard of proof and disagree with the majority's conclusion that "[t]his testimony demonstrates only that Officer Bridgeforth did not know for certain that Johnson was armed." Slip op. at 9.

[30] Undoubtedly, officer safety is a significant priority, and in many cases, a patdown is not unreasonably intrusive. However, we must adhere to the Fourth Amendment standard as articulated by the U.S. Supreme Court. Johnson's behavior was disrespectful and disobedient, maybe even arrogant,

---

[4] "Q. Okay …. Did Mr. Johnson's decision to put his hand in his pocket increase or decrease your officer safety concern?' A. Increased." Tr. at 33.

but the articulated standard requires a particularized suspicion that he was "armed and dangerous." If our supreme court wishes to interpret the Fourth Amendment as allowing a hand-in-the-pants-pocket exception to the rule that a police officer must harbor a reasonable and particularized suspicion that a person is armed and dangerous before the officer may perform a lawful patdown search, it is certainly free to do so. As a practical matter, such an exception might be justified based on officer safety concerns, especially in light of the current tensions surrounding police-citizen interactions. In my view, carving out an exception would be a more appropriate jurisprudential approach than engaging in legal fiction in order to circumvent the "armed and dangerous" standard. Until then, however, I believe we must adhere to the currently articulated standard, which contains no such exception.

[31] In short, I believe that the patdown of Johnson constituted an unlawful search under the Fourth Amendment. Because the firearm was the product of that search, it should have been excluded. *See Hill*, 956 N.E.2d at 179 (explaining that "fruit of the poisonous tree doctrine" bars evidence directly obtained or derivatively gained from unlawful search or seizure). On that basis, I would reverse his conviction for possession of a firearm by an SVF.