## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 23 2016, 8:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marquen Coker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 23, 2016<br><br>Court of Appeals Case No.<br>02A03-1506-CR-744<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Judge<br><br>The Honorable Robert E. Ross, Magistrate<br><br>Trial Court Cause No.<br>02D04-1504-CM-1227 |

**Najam, Judge.**

# Statement of the Case

Marquen Coker appeals his convictions, following a bench trial, for carrying a handgun without a license, as a Class A misdemeanor, and possession of marijuana, as a Class B misdemeanor. Coker raises two issues on appeal, which we restate as follows:

1. Whether the trial court erred in admitting into evidence the marijuana found on Coker's person and the handgun found in the car he drove because they were found as a result of an unconstitutional search and seizure.

2. Whether there was sufficient evidence that the item found in the car Coker drove was a handgun as defined under Indiana law.

We affirm in part and reverse in part.

# Facts and Procedural History

On April 6, 2015, Coker was driving his mother's car on Suttenfield Street in Fort Wayne when he pulled in front of Officer Gary Hensler's marked squad car. Officer Hensler followed Coker for approximately one block before Coker stopped at his brother's house. Officer Hensler circled the block because he believed Coker's behavior of exiting his car quickly and standing in the front yard of a house was odd. Officer Hensler watched Coker from a distance and followed Coker when he returned to his car approximately five minutes later. Officer Hensler then observed Coker use an alley as a throughway, in violation of a city ordinance. Coker stopped his car in the parking lot of a barber shop

and got out of the car just as Officer Hensler pulled up behind Coker's car and activated his emergency lights. Officer Hensler observed that Coker got out of the car quickly and that Coker looked nervous, fearful, and sweaty.

[4] The area in which Coker was located was a high-crime area, with a high incidence of gun use and drug activity. Because of this fact and Coker's behavior, Officer Hensler instructed Coker to stop, and Coker immediately did so. Officer Hensler approached Coker, detained him, handcuffed his hands behind his back, and then conducted a pat down of Coker "for officer safety." Tr. at 10. Three or four people came out of the barber shop toward which Coker had been walking when he was stopped. Another officer, Officer Taylor, arrived at the scene while Officer Hensler had Coker detained.

[5] During his pat down of Coker, Officer Hensler felt what he believed from his past experience as a police officer to be two pill bottles in Coker's pants pocket. Officer Hensler removed the pill bottles and observed a green, leafy substance in a transparent, amber-colored pill bottle. Officer Hensler then opened the other bottle, which was opaque, and discovered marijuana in it. Officer Hensler then smelled the odor of marijuana coming from the car Coker had been driving. He then handed over custody of Coker to Officer Taylor, who placed Coker in the back seat of his squad car while Officer Hensler conducted a search of the interior of Coker's car. Officer Hensler found a handgun under the driver's seat of the car. Officer Hensler took photographs of the gun, read Coker his *Miranda* rights, and asked Coker questions. Coker stated at this point that the car was

his mother's car, the gun belonged to his friend, and Coker needed the gun for protection.

[6] On April 7, 2015, the State charged Coker with carrying a handgun without a license, as a Class A misdemeanor, and possession of marijuana, as a Class B misdemeanor. On May 12, 2015, Coker filed a motion to suppress both the marijuana and the gun on the theory that they had been obtained pursuant to an unconstitutional search and seizure. Coker waived his right to a jury trial and, on June 2, 2015, the trial court heard evidence on the motion to suppress and the criminal charges.

[7] At the bench trial, Officer Hensler testified as the sole witness for the State. The trial court denied the motion to suppress and proceeded on the criminal charges. The State admitted into evidence, over Coker's objections, the pill bottles and marijuana found on Coker's person and the handgun found in the car Coker was driving. The court found Coker guilty on both charges and sentenced him to an aggregate term of 180 days of home detention. This appeal ensued.

## Discussion and Decision

### Issue One: Fourth Amendment and Article 1, Section 11 claims

*Standard of Review*

[8] Coker argues on appeal that Officer Hensler's seizure and search of Coker and the car he drove violated his rights under both the Fourth Amendment to the

United States Constitution and Article 1, Section 11 of the Indiana

Constitution. He originally challenged the admission of the marijuana and

handgun in a motion to suppress. However, rather than taking an interlocutory

appeal on the denial of his motion, he proceeded to a complete bench trial.

> "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*. In this sense, the standard of review differs from the typical sufficiency of the evidence case where only evidence favorable to the verdict is considered. *Fair v. State*, 627 N.E.2d 427, 434 (Ind. 1993).

*Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007).

*Search and Seizure of Coker*

Coker first challenges the constitutionality of Officer Hensler's seizure and

search of Coker's person;[1] these actions, he claims, went beyond a mere traffic

---

[1] Coker does not challenge Officer Hensler's initial traffic stop, nor should he. Under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, "[i]t is well settled that a police officer may stop a vehicle when he observes a minor traffic violation." *Kroft v. State*, 992 N.E.2d 818, 821 (Ind. Ct. App. 2013). Here, it is undisputed that Officer Hensler pulled Coker over for using an alley as a throughway,

stop and, instead, constituted an arrest[2] and search incident to arrest without probable cause. Both federal and state constitutional provisions prohibit a search without a warrant unless certain narrow exceptions apply. *State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015). One such exception is a search incident to a valid arrest.[3] *Id.*

[10]     However, a Fourth Amendment claim is analyzed differently than a claim under Article 1, Section 11 of the Indiana Constitution. Under the Fourth Amendment, if a search is conducted without a warrant, the State bears the burden of proving an exception to the warrant requirement. *See, e.g.*, *Swanson v. State*, 730 N.E.2d 205, 208 (Ind. Ct. App. 2000), *trans. denied*. An officer may briefly detain an individual without a warrant or probable cause if the officer observes unusual conduct that leads him to conclude, in light of his experience, that criminal activity is afoot. *Id.* at 209 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). However, reasonable suspicion must be based upon specific and articulable facts, not mere hunches. *Id.* Under Article 1, Section 11 of the Indiana

---

in violation of a local ordinance. Such a traffic stop without a warrant is constitutional, provided it is for a short period of time. *Id.*

[2] By handcuffing Coker, Officer Hensley effected an arrest. Although "'there is no bright line for evaluating whether an investigative detention is unreasonable,' *Mitchell v. State*, 745 N.E.2d 775, 782 (Ind. 2001), . . . [o]ur supreme court has held that an arrest occurs 'when a police officer interrupts the freedom of the accused and restricts his liberty of movement.' *Sears v. State*, 668 N.E.2d 662, 667 (Ind. 1996)." *Reinhart v. State*, 930 N.E.2d 42, 46 (Ind. Ct. App. 2010). Such was clearly the case here, and neither party argues otherwise.

[3] "A search incident to arrest serves important purposes, such as ensuring that the arrestee is unarmed, preventing the arrestee from bringing contraband into jail, and preventing the destruction of evidence." *Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011).

Constitution, the State must show that, in the totality of the circumstances of a detention, the police behavior was reasonable. *Id.* This analysis is similar to that set forth in *Terry*; that is, reasonable suspicion will be found where the facts known to the officer at the time of the stop and the reasonable inferences drawn therefrom would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Davis v. State,* 858 N.E.2d 168, 172 (Ind. Ct. App. 2006).

[11] The prerequisites for conducting a lawful pat-down due to officer safety concerns are also well-settled. A police officer may conduct a pat-down search for weapons if the officer reasonably believes, based on specific reasonable inferences drawn from the facts in light of his experience, that the person is armed and dangerous. *Swanson*, 730 N.E.2d at 210. A generalized concern of officer safety, alone, will not support a lawful frisk. *Id.* As the Supreme Court has stated:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, [the police officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U.S. 40, 64 (1968) (citing *Terry,* 392 U.S. 1).

[12] Here, the only reasonable suspicion of unlawful activity to have occurred at the time of the search was a minor traffic violation. Such suspicion clearly justified the initial stop of Coker, *Kroft*, 992 N.E.2d at 821. However, a routine traffic stop "does not automatically justify a non-consensual pat-down without reasonable suspicion that the subject may be armed and dangerous." *Cunningham*, 26 N.E.3d at 26 (citing *Knowles*, 525 U.S. at 117-118).

[13] Officer Hensler testified that the reasons he detained and searched Coker were because of Coker's nervous behavior and because they were in a high-crime and high-drug area. However, these reasons do not support a warrantless search of Coker. "[I]ndividuals who enter these 'high drug areas' do not lose their Fourth Amendment protections; there must be something about the individual or the situation which causes the officer to reasonably believe that a certain individual carries a weapon." *Swanson*, 730 N.E.2d at 211. Thus, this court held in *Swanson* that the facts that the defendant had been detained in a high drug area and had his hands in his pockets were "not sufficient to cause a reasonable officer to fear for his safety" and conduct a pat-down. *Id*. Moreover, "[b]ecause it is not at all unusual that a citizen may become nervous when confronted by law enforcement officials, other evidence that a person may be engaged in criminal activity must accompany nervousness before the nervousness will evoke suspicion necessary to support detention." *State v. Quirk*, 842 N.E.2d 334, 341 (Ind. 2006). The facts that Coker looked nervous and was in a high-crime and high-drug area do not support a reasonable inference that would cause an ordinarily prudent person to believe that Coker

had engaged in or was about to engage in criminal activity or that he was armed and dangerous.

[14] However, the trial court found that Officer Hensler also detained and searched Coker because he had smelled marijuana coming from Coker's car. In its decision on the motion to suppress, the trial court stated that "when the Defendant did stop the car and the Officer approached . . . and I'm quoting now from the Officer's testimony, 'As I was encountering the Defendant, I noticed a strong odor of burned marijuana coming from the vehicle.'"[4] Tr. at 35. The trial court concluded that Officer Hensler's testimony was that he smelled the marijuana coming from the car before handcuffing and searching Coker, and, based on that conclusion, the trial court denied the motion to suppress.

[15] But the record shows that the trial court's conclusion was erroneous because it took Officer Hensler's statement out of the context and order of his testimony. During the State's direct examination, Officer Hensler testified that, upon pulling his car up behind Coker's car in the barbershop parking lot, Coker exited his car quickly, and he appeared nervous, and they were in a high crime area. The direct examination of Officer Hensler continued as follows:

---

[4] The trial court misquoted Officer Hensler's testimony; his actual testimony was as follows: "As I was encountering the Defendant, the door was still open to the vehicle and I smelled a strong odor of marijuana coming from inside the vehicle." Tr. at 11.

Q. What happened *at that point in time*, sir?

A. Because of the way he was acting and this area where I initially observed him, in this area now is a very high crime area of the city, with a lot of narcotics dealing and gun fire, shots fired, homicides are very high in this area. I approached him and *I detained him at this point*.

*Id*. at 9-10 (emphases added).

After discussing the weather conditions at the time of the stop and the fact that Coker was sweating when it was cold outside, the direct examination continued as follows:

Q. So *at that point in time*, you said you detained the Defendant?

A. Yes.

Q. How did you proceed *at that point*, sir?

A. For officer safety[,] I handcuffed him.

Q. Okay, and what did you do next?

A. I patted him down for officer safety.

*Id*. at 10–11 (emphases added). The State then questioned Officer Hensler about what he found in his pat-down of Coker. Officer Hensler testified that he

found pill bottles with what appeared to be marijuana in them. The direct examination continued as follows:

> Q. Did you make any observations regarding the vehicle *at that point in time*?
>
> A. As I was encountering the Defendant, the door was *still* open to the vehicle and I smelled a strong odor of marijuana coming from inside the vehicle.

*Id*. at 11 (emphases added). Officer Henlser then testified about his training and experience with marijuana, and then the direct examination continued as follows:

> Q. How did you proceed *at that point in time*, Sir?
>
> A. The Defendant was given over to Officer Taylor, and placed in the back of his squad car for being detained for this investigation, and at that point [I] conducted a Probable Cause search of the interior of the vehicle.
>
> Q. And did you find anything at that point in time?
>
> A. Underneath the driver's seat, I located a handgun.

*Id*. at 12 (emphasis added).

[17] At no point did Officer Hensler state that he detained and patted-down Coker because he had smelled marijuana emanating from Coker's vehicle. To the contrary, it is clear from Officer Hensler's testimony that he handcuffed and

patted down Coker *before* he smelled marijuana coming from the car. He testified that he approached Corker and then he immediately detained, cuffed, and searched him. The prosecutor then asked Officer Hensler if he made any observations about the vehicle *at that time*, that is, after he had searched Coker and found the pill bottles. The officer testified that the car door was "still" open and that he smelled marijuana coming from the car. Tr. at 11. At that point, Coker was already in custody.

[18] Officer Hensler's use of the word "still" confirms the timing and order of events as set out in his testimony. The word "still" denotes the passage of time. Here, the word "still" indicates that it was only after he had arrested Coker that Officer Hensler turned his attention to the vehicle, found that the door was "still" open, and smelled the marijuana. Officer Hensler testified that he then handed Coker over to the other officer to be placed in the squad car while he searched the vehicle. Thus, there is no conflict in the evidence. Rather, Officer Hensler's testimony consistently demonstrates that he had hand-cuffed, detained, and searched Coker before he smelled marijuana coming from the vehicle. Viewing this uncontested evidence in favor of the defendant, as we must, *Widduck*, 861 N.E.2d at 1269, it is clear that the officer smelled the marijuana only after he had arrested and searched Coker. Under the Fourth Amendment, an officer must have reasonable suspicion of criminal activity before making an investigative stop, and he must have reasonable suspicion that the suspect is armed and dangerous *before* conducting a pat down for weapons under *Terry v. Ohio*. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (citing *Terry*,

392 U.S. 1). Likewise, Article 1, Section 11 only permits a stop and frisk *after* the officer has formed reasonable suspicion. *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001). And the totality of the circumstances test of Article 1, Section 11 does not mean that the trier of fact in the first instance, or this court on appeal, can re-order the facts to establish reasonable suspicion for a stop and frisk after-the-fact.

[19] Further, on the motion to suppress, the State did not argue that Officer Hensler smelled marijuana before seizing and searching Coker's person. Rather, in its closing statement on the motion, the State cited the following evidence as the grounds for the investigatory stop and pat-down: Coker had exited his vehicle immediately upon being stopped, he was in a high crime area, he appeared nervous, and he tried to distance himself from the vehicle. The State then concluded, "[a]t *that point*, the reasonable suspicion was certainly there for the *Terry* stop for the officer's safety. *At that point*, he pulled out the first pill bottle." Tr. at 31-32 (emphases added). In arguing the facts which led to Coker's arrest the State made no reference to the smell of marijuana.

[20] In sum, Officer Hensler did not testify, and the State did not contend in opposing the motion to suppress, that the smell of marijuana emanating from the vehicle was a basis for the detention and the pat-down frisk of Coker. Neither the trial court nor this court may rely on such extrinsic evidence as a post hoc justification for the initial *Terry* stop and search of Coker's person. *See, e.g., Query v. State*, 745 N.E.2d 769, 771 (2001) (noting that neither the trial court ruling on a motion to suppress nor an appellate court reviewing that

decision will consider post hoc justifications for a search). Officer Hensler's seizure and pat-down of Coker was not supported by reasonable suspicion that Coker was armed and dangerous or had engaged, or would engage, in criminal activity. Therefore, the search of his person violated both the federal and state constitutions.

*Search of the Vehicle Coker Drove*

[21] Coker also alleges that the search of the car he drove was unconstitutional. He is mistaken. Rather, regardless of when Officer Hensler smelled marijuana coming from the car, that smell was sufficient to justify a search of the car.

> [W]hen a trained and experienced police officer detects the strong and distinctive odor of burnt marijuana coming from a vehicle, the officer has probable cause to search the vehicle. That is true under both the Fourth Amendment of our federal constitution and under Article 1, Section 11 of the Indiana Constitution.

*State v. Hawkins*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002), *trans. denied*. This is also true for the smell of raw marijuana. *Miller v. State*, 846 N.E.2d 1077, 1082 (Ind. Ct. App. 2006), *trans. denied*. The search of the car driven by Coker was constitutional.

*Suppression of the Evidence*

[22] Having determined that the search of Coker's person violated both the United States and the Indiana Constitutions, we next turn to whether the evidence

unconstitutionally seized from Coker's person must be suppressed.[5] We conclude that, while the Fourth Amendment does not mandate the suppression of this evidence, Article 1, Section 11, as interpreted by Indiana's appellate courts, does mandate the evidence be suppressed.

[23] Under the Fourth Amendment, "the inevitable discovery exception to the exclusionary rule permits the introduction of evidence that eventually would have been located had there been no error." *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001) (quotations and citations omitted), *trans. denied*. Because the search of Coker's car was constitutional, at the point Officer Hensler found the gun he would have had probable cause to arrest Coker and search him incident to that arrest. And, during that legal search, the officer inevitably would have discovered the marijuana on Coker's person. Thus, under the Fourth Amendment, the marijuana would have been admissible because it eventually would have been located even had there been no original misconduct by the police. *See, e.g.*, *Nix v. Williams*, 467 U.S. 431, 444 (1984).

[24] However, "the inevitable discovery doctrine has not been adopted as a matter of Indiana constitutional law." *Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), *trans. denied*. Rather, our supreme court has clearly and firmly held that "our state constitution mandates that the evidence found as a result of a[n unreasonable] . . . search be suppressed." *Brown v. State*, 653 N.E.2d 77, 80

---

[5] Of course, since the search of the vehicle was constitutional, the trial court did not abuse its discretion in the admission of the evidence seized from the vehicle.

(Ind. 1995). Accordingly, the inevitable discovery doctrine is not available to validate the evidence of marijuana recovered from Coker's person as a result of the unjustified pat-down. *Id*. And the State does not argue otherwise in this appeal. Thus, because the search of Coker's person was unconstitutional, the marijuana found on his person must be suppressed under Article 1, Section 11 of the Indiana Constitution.

### *Issue Two: Sufficiency of the Evidence*

[25] Coker contends that his conviction for carrying a handgun without a license is not supported by sufficient evidence. Our standard of review under such claims is clear and well-settled:

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations and quotation marks omitted).

[26] To prove that Coker carried a handgun without a license in violation of Indiana Code Section 35-47-2-1 (West 2015), the State had to provide evidence that a handgun was found in the vehicle and that Coker had control of either the weapon or of the vehicle with knowledge of the weapon's presence in the

vehicle. *Thurman v. State*, 793 N.E.2d 318, 320 (Ind. Ct. App. 2003) (citing *Klopfenstein v. State*, 439 N.E.2d 1181, 1184 (Ind. Ct. App. 1982)). Once the State demonstrates that a defendant had possession of a handgun on his body or in a vehicle, it then becomes the defendant's burden to demonstrate that he had a valid license to carry the handgun. *Wilson v. State*, No. 49A02-1409-CR-673, 2015 WL 4496244, *9 (Ind. Ct. App. July 23, 2015).

[27] Here, the evidence shows that Officer Hensler found a gun under the driver's seat of the car Coker was driving, and the gun was placed in such a way that a driver could reach down below the seat to access it. Knowledge of the gun's presence in the car "can be inferred from the fact that the item was found in a place under [the defendant's] dominion and control." *Klopfenstein v. State*, 439 N.E.2d at 1185. Moreover, when Officer Hensler asked Coker about the car and the gun,[6] Coker stated that the car belonged to his mother, the gun belonged to a friend, and Coker needed the gun for protection. Clearly, Coker was aware that he was driving a car with a handgun in it. This evidence is sufficient to prove that a gun was found in the car over which Coker had control, and he knew of the weapon's presence in the car, and he intended to transport the gun in the car. Moreover, Coker provided no evidence that he had a license to carry a handgun or firearm. Therefore, the evidence was

---

[6] Officer Hensler read Coker his *Miranda* rights before questioning Coker.

sufficient to support Coker's conviction of carrying a handgun without a license.

[28] Still, Coker claims the evidence was insufficient because the State did not prove that the item they found was a "handgun" as defined under Indiana law, i.e., Indiana Code Section 35-47-1-6 (2015).[7] The evidence presented showed that: 1) Officer Hensler, who is familiar with firearms, testified that the gun he found under the passenger seat of the car Coker drove was a handgun; 2) the handgun bore a serial number as a unique identifier; 3) a continuity report identified the item found in the car as a firearm, specifically a .40 caliber Glock; and 4) the gun itself was shown in court and admitted into evidence. This is sufficient evidence that the gun found in the car driven by Coker was a handgun pursuant to Indiana law.

### *Conclusion*

[29] Officer Hensler conducted an illegal pat-down of Coker; therefore, we reverse the trial court's admission of the evidence seized from that pat-down and the conviction that resulted from the admission of that evidence. However, the search of the car driven by Coker was constitutional; therefore, we affirm the trial court's admission of the handgun seized from the car.

---

[7] That section defines a handgun as "any firearm (1) designed or adapted so as to be aimed and fired from one hand, regardless of barrel length; or (2) any firearm with: (A) a barrel less than sixteen (16) inches in length; or (B) an overall length of less than twenty-six inches." Ind. Code § 35-47-1-6 (2015). "Firearm" is defined as "any weapon: (1) that is: (A) capable of expelling; or (B) designed to expel; or (2) that may readily be converted to expel; a projectile by means of an explosion." I.C. § 35-47-1-5.

Affirmed in part and reversed in part.

Kirsch, J., and Barnes, J., concur.