John G. COOPER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A05–1005–CR–309.

Court of Appeals of Indiana.

Jan. 11, 2011.

Rehearing Denied February 21, 2011.

---

Paula M. Sauer, Danville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we decide an issue of first impression regarding the application of double jeopardy principles when a defendant's sentence is enhanced under the firearm enhancement statute following a conviction for reckless homicide. We conclude that double jeopardy principles are not implicated in this instance.

Appellant-defendant John G. Cooper appeals the five-year sentence that was imposed under the Firearm Enhancement Statute,[1] following the jury's determination that he knowingly or intentionally used a firearm in the commission of Reckless Homicide,[2] a class C felony. Specifically, Cooper argues that the five-year enhancement cannot stand because it is neither "reasonable nor logical to infer that Cooper used [a firearm] in a knowing or intentional manner to recklessly kill" the victim.

1.  Ind.Code § 35–50–2–11.

2.  Ind.Code § 35–42–1–5.

Appellant's Br. p. 7. Thus, Cooper claims that the evidence was insufficient to support the enhancement. In the alternative, Cooper contends that double jeopardy principles bar the enhancement because "both the conviction and the enhancement were based on the single act of killing [the victim] with a firearm." *Id.*

Finally, Cooper contends that the thirteen-year aggregate sentence was inappropriate when considering the nature of the offense and his character. Concluding that Cooper was properly sentenced under the Firearm Enhancement Statute and finding that Cooper's sentence was appropriate, we affirm the judgment of the trial court.

### FACTS

On February 23, 2009, Angela Cooper, Cooper's wife, was employed as a home nursing aide for Delores Gelinas. Delores lived with her son, Michael Gelinas (Gelinas), in Avon. Gelinas and Angela began a romantic relationship in April 2009, and Cooper suspected that Angela was cheating on him. However, Angela denied that she and Gelinas were having an affair.

On May 22, 2009—with Gelinas's financial help—Angela signed a lease for an apartment in Indianapolis. Later that day, Cooper and his father drove to Gelinas's residence. When Angela came outside, Cooper demanded to speak to Gelinas. Cooper was "very, very upset" and he and Gelinas argued. Tr. p. 797. When Cooper said that he wanted to retrieve some of Angela's clothing from the residence, Gelinas told him to "get the f* * * off his property." *Id.* at 798–99.

The next day, Angela told Cooper that "their marriage was over." *Id.* at 804. Later that day, Cooper withdrew $1200 from the bank, went to a pawn shop, and purchased a shotgun. Cooper also went to a different store and bought some of the most "destructive shells" available for the weapon. *Id.* at 880, 1312–13.

On May 26, 2009, Cooper told a coworker that he would not be in the next day because he was traveling to Richmond. Cooper then contacted Angela around 5:00 p.m., while she was at Gelinas's residence. Angela informed Cooper that she was going to leave him and that she had rented her own apartment.

The next morning, Cooper drove to Gelinas's house, armed with the shotgun. He parked his vehicle on a corner near the residence and waited for Gelinas to leave for work. When Gelinas came outside, an altercation ensued. At some point, Gelinas was shot in the hand and chest. Gelinas died as a result of those gunshot wounds. At approximately 5:37 a.m., a neighbor heard the shot and contacted the police.

Several police officers began driving through the neighborhood, but Cooper had already fled the scene. At that point, the officers did not see Gelinas's body in the driveway. At 7:30 a.m., Cooper walked into a restaurant in Brookville that was about ninety miles from the crime scene and ate breakfast.

When Angela arrived for work that morning, several police officers were at her place of employment. After the police had interviewed Angela for nearly six hours, Angela's father informed her that he had spoken to Cooper around 12:15 p.m. that afternoon. During that conversation, Cooper admitted that he had "just shot [Gelinas]." Tr. p. 975. Cooper also contacted his father and told him that "the gun went off and [Gelinas] fell" when they had wrestled. *Id.* at 999. Cooper agreed to meet his father at Gelinas's residence and surrender to police.

Shortly after 1:00 p.m., a Henry County sheriff's deputy discovered Cooper lying in a field near his wrecked vehicle. Cooper

was severely injured and it appeared that he had driven his vehicle into a tree at a high rate of speed. After being transported to the hospital, Cooper told police officers that "it" had been a "terrible accident," and that he just wanted to "scare the sh*t out of [Gelinas]." *Id.* at 1388.

On June 24, 2009, the State filed an amended information charging Cooper with murder, alleging that he had committed the offense by means of a deadly weapon.[3] Cooper was also charged with a firearm enhancement, alleging that he "knowingly or intentionally" used a firearm in the commission of the offense. Appellant's App. p. 20.

Following a six-day jury trial that concluded on March 2, 2010, Cooper was convicted of reckless homicide, a class C felony. The second phase of the trial, regarding the firearm enhancement, was conducted immediately following the reading of the jury's verdict. The jury determined that the State proved the firearm enhancement beyond a reasonable doubt.

On April 12, 2010, Cooper was sentenced to an executed term of eight years for reckless homicide, which was enhanced by five years for using a firearm. In imposing the thirteen-year aggregate sentence, the trial court identified Cooper's lack of criminal history as a mitigating factor. The trial court also identified eight aggravating circumstances, including Cooper's lack of remorse, his denial of responsibility, the particular circumstances of the offense, and the fact that he planned the crime. Cooper now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Cooper first claims that the evidence is insufficient to support the firearm enhancement. Specifically, Cooper maintains that the State had to specifically prove that the weapon was knowingly or intentionally used to commit the offense of reckless homicide. And because the evidence purportedly established that Cooper could not have used the shotgun in a knowing or intentional manner to recklessly kill Gelinas, the enhancement must be set aside.

■ In addressing Cooper's challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility, and will focus on the evidence most favorable to the verdict together with the reasonable inferences that may be drawn therefrom. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

The reckless homicide statute provides that "A person who recklessly kills another human being commits reckless homicide, a Class C felony." I.C. § 35–42–1–5. The firearm enhancement statute states that:

(a) As used in this section, "firearm" has the meaning set forth in IC 35–47–1–5.

(b) As used in this section, "offense" means:

(1) a felony under IC 35–42 that resulted in death or serious bodily injury;

(2) kidnapping; or

(3) criminal confinement as a Class B felony.

(c) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an

---

3. The original information that was filed on May 28, 2009, did not allege that Cooper had killed Gelinas by means of a deadly weapon. Appellant's App. p. 18.

additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.

. . .

(e) If the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense, the court may sentence the person to an additional fixed term of imprisonment of five (5) years.

I.C. § 35–50–2–11.

The State's information alleging that Cooper committed murder provides that

> On or about May 27, 2009, . . . John Gary Cooper did knowingly or intentionally kill, by means of a deadly weapon, another human being, to wit: Michael R. Gelinas.

Appellant's App. p. 19. And the information charging Cooper with the firearm enhancement alleged that

> John Gary Cooper, heretofore charged on page one, did knowingly or intentionally use a firearm in the commission of an offense that was a felony under IC 35–42 and that did result in death.

*Id.* at 20.

In essence, Cooper's challenge to the sufficiency of the evidence is that the offense of reckless homicide only requires the State to prove that he acted recklessly, while the firearm enhancement requires proof of intentional or knowing conduct. However, it is clear that while the State must prove that Cooper's reckless act caused the death of Gelinas in the first instance, it was required to prove that Cooper knowingly or intentionally used a firearm to commit a reckless act.

In this case, the evidence demonstrated that Cooper purchased a shotgun and shells, armed himself with the gun, and loaded it. Tr. p. 870, 923. He then drove to Gelinas's residence and exited the vehicle with the gun in his possession. *Id.* at 923. Thereafter, Cooper intentionally confronted Gelinas, allegedly intending only to "scare the sh*t out of him." *Id.* at 999, 1388. However, as the two wrestled, Cooper apparently discharged the shotgun that resulted in Gelinas's death.

From this evidence, it was reasonable for the jury to conclude that Cooper's use of the shotgun was intentional, even if the actual killing resulted from reckless conduct. In other words, Cooper intentionally used the shotgun and recklessly discharged it, causing Gelinas's death. As a result, Cooper's argument that the evidence was insufficient to support the enhancement is unavailing.

*II. Double Jeopardy Concerns*

██ In a related issue, Cooper maintains that he was subjected to double jeopardy when his sentence for reckless homicide by means of a deadly weapon was enhanced because a firearm was used in the commission of that offense. In other words, Cooper points out that his "use of the shotgun to kill Gelinas was what the State relied on to support both the reckless homicide charge and the firearm enhancement." Appellant's Br. p. 18. As a result, Cooper claims that the five-year sentence enhancement must be set aside because the prohibition against double jeopardy was violated.

At the outset, both parties observe that Indiana courts have not squarely addressed this issue. In support of his argument, Cooper relies on the Indiana Constitution, which provides: "No person shall be put in jeopardy twice for the same offense." Ind. Const. Art. 1, § 14. This provision was intended to "prevent the

State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). Under *Richardson,* "two or more offenses are the same offense ... if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49. While this rule is aimed primarily at multiple convictions, there is also a general prohibition against multiple enhancements [4] absent explicit legislative direction. *Nicoson v. State,* 938 N.E.2d 660, 662–63 (Ind.2010); *Miller v. State,* 790 N.E.2d 437, 438 (Ind.2003). Double Jeopardy governs concerns about the elements of multiple counts and claims of multiple sentencing enhancements turn on statutory interpretation. *Nicoson,* 938 N.E.2d at 662–63.

Notwithstanding the absence of Indiana caselaw directly on point, we note that several jurisdictions have concluded that firearm sentencing enhancements similar to ours do not raise double jeopardy concerns because the enhancement is merely a cumulative punishment rather than a separate offense. *See People v. Izaguirre,* 42 Cal.4th 126, 64 Cal.Rptr.3d 148, 164 P.3d 578 (Cal.2007) (observing that enhancements were not elements of the crime for the purpose of multiple convictions rule); *State v. Claborn,* 95 Wash.2d 629, 628 P.2d 467, 471–72 (1981) (holding that because sentencing enhancements are not "offenses," double jeopardy concerns are not implicated); *Mayers v. State,* 42 So.3d 33, 45 (Miss.Ct.App.2010) (holding

that sentence enhancements for the use of a firearm during the commission of a felony did not violate double jeopardy); *State v. Gabaldon,* 92 N.M. 230, 585 P.2d 1352, 1356–57 (N.M.Ct.App.1978) (concluding that the firearm enhancement statute does not create a separate crime, but establishes an additional penalty for felonies that are committed using a firearm and therefore does not implicate double jeopardy).

We agree with those jurisdictions recognizing that sentencing enhancements are not offenses for double jeopardy purposes in circumstances such as the one before us. Indeed, the Firearm Enhancement Statute only prescribes an additional *penalty* for felonies that are committed with the use of a firearm.

Moreover, we note that in *Nicoson,* the defendant was charged with, and convicted of, criminal confinement with a deadly weapon, a class B felony, because he was armed with a deadly weapon.[5] The trial court enhanced the sentence for that offense pursuant to Indiana Code section 35–50–5–2 because the defendant "used" a firearm while committing the offense. *Id.* at 661. It was determined, among other things, that the five-year sentence enhancement did not run afoul of double jeopardy principles. *Id.* at 661, 662–63, 665.

In reaching that result, the *Nicoson* Court observed that

The 'extra' five years about which Nicoson complains is not part of these provisions in the confinement statutes that authorize higher classes of felonies to be charged. Rather, it appears in the part

---

4. Double jeopardy concerns preclude "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Guyton v. State,*

771 N.E.2d 1141, 1143 (Ind.2002) (quoting *Richardson,* 717 N.E.2d at 56 (Sullivan, J., concurring)).

5. Ind.Code § 35–42–3–3(b)(2)(A).

of the Code on penalties. The section at issue authorizes an additional fixed sentence for the underlying offense where a firearm is used.

. . .

Here, the State initially needed to prove only that Nicoson committed confinement while armed with a deadly weapon. Ind.Code § 35–42–3–3. To apply the additional fixed five-year term the statute requires the State to prove Nicoson "used" a firearm in commission of his offense. Ind.Code § 35–50–2–11. The record clearly reveals that Nicoson was not only armed with a deadly weapon, but that he used the firearm—firing into the air, ordering the victims from the vehicle with it, and firing at the victims' vehicle as they drove away.

*Id.* at 664, 665.

Here, the additional five years about which Cooper complains does not concern, in any way, an elevation of a statutory offense to a higher class of felony. Rather, Cooper was charged with the crime of reckless homicide, a class C felony. As set forth above, an individual commits that offense when it is established that he or she "recklessly kills another human being." I.C. § 35–42–1–5. Reckless homicide does not require any showing that a defendant used a weapon, and the jury was not required to specifically determine that Cooper used a shotgun in the commission of the underlying offense. And unlike the confinement statute under which Nicoson was charged, there is no statutory provision that elevates the offense of reckless homicide to a higher class of felony if additional circumstances are present.

Moreover, the five-year sentence enhancement in *Nicoson* that applies to Cooper's use of a firearm in the commission of the offense is embodied in the *penalties* provision of the Indiana Code. More succinctly, Cooper was convicted of a single offense and only one sentence enhancement was imposed as a result of his use of the firearm in the commission of the crime. Thus, we are not concerned here with the prohibition against multiple enhancements.

We also note that the circumstances here are unlike those that involve, for instance, the *offenses* of carrying a handgun without a license and a violation of the serious violent felon (SVF) statute. For instance, under Indiana Code section 35–47–2–1, the State is required to prove that the defendant carried a handgun in a vehicle or on his person without a license. And under the SVF statute, the State must prove that the defendant was convicted of committing, attempting to commit, or conspiring to commit a serious violent felony and "knowingly or intentionally possess[ed] a firearm." I.C. § 35–47–4–5.

When construing these statutes in *Hatchett v. State,* 740 N.E.2d 920, 926 (Ind.Ct.App.2000), we determined that there was a reasonable probability that the trial court used the same evidentiary facts to establish the essential elements of both *offenses.* As a result of the double jeopardy violation, we remanded the cause and instructed the trial court to vacate the defendant's conviction and sentence for carrying a handgun without a license.

Again, Cooper was convicted of a single offense, for which the legislature has specifically provided a harsher penalty based on the use of a firearm. And even though the jury relied upon Cooper's use of the shotgun for both the underlying offense and the enhancement, the legislature's intent is clear that criminal offenses committed with firearms are to receive additional punishment. Moreover, if the legislature intended that offenses resulting in serious bodily injury alleged to have been committed with a firearm were to be excepted from the firearm enhancement, it could have drafted the statute in that manner.

However, the legislature chose to include all offenses against persons that result in serious bodily injury. And the inclusion of that requirement renders it virtually certain that the legislature would have foreseen that many of those injuries would be inflicted by the use of firearms.

For all these reasons, we conclude that no double jeopardy violation occurred and reject Cooper's contention that his sentence under the Firearm Enhancement Statute must be set aside.

### III. Sentencing

Finally, Cooper argues that the thirteen-year aggregate sentence is inappropriate in light of the nature of the offense and his character. In reviewing the appropriateness of a sentence under Indiana Appellate Rule 7(B), we defer to the trial court. *Stewart v. State,* 866 N.E.2d 858, 866 (Ind.Ct.App.2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

In this case, the trial court imposed the maximum eight-year sentence following Cooper's class C felony conviction for reckless homicide. Ind.Code § 35–50–2–6 (providing that a sentence for a class C felony conviction may be two years to eight years, with an advisory term of four years). It then enhanced that sentence by five years pursuant to the Firearm Enhancement Statute. I.C. § 35–50–2–11.

As for the nature of the offense, the evidence established that on the weekend prior to Gelinas's death, Cooper purchased a shotgun. Tr. p. 870. Cooper made a separate trip to obtain shells for the gun, which were some of the most destructive available for the weapon. *Id.* at 880, 1312–13. Cooper loaded the shotgun, proceeded to Gelinas's residence, and waited for him to leave for work. *Id.* at 923. When Gelinas exited the house, Cooper apparently confronted Gelinas with the gun and shot him through the hand and chest, killing him. *Id.* at 937, 940, 1156, 1174, 1189. Thereafter, Cooper fled the scene and disposed of the shotgun. *Id.* at 1038, 1316.

In a number of ways, the nature of the offense also reveals Cooper's character. For instance, Cooper testified that he only meant to "scare the sh*t" out of Gelinas during the confrontation. *Id.* at 1388. Even assuming that Cooper's assertion is true, it was unnecessary for him to have purchased such high-powered shells or to even have purchased the weapon. After the incident, Cooper left Gelinas bleeding on the pavement, rather than seeking help for the alleged "terrible accident." *Id.* Indeed, Cooper's initial reaction was to escape responsibility and put as many miles between him and the scene of the killing as possible.

Cooper's callousness and self-centeredness are revealed by his decision to flee the scene immediately after the accident. As a result, when examining the horrific nature of this offense and Cooper's character as revealed by his actions before, during, and after the commission of the offense, we conclude that Cooper has failed to demonstrate that the sentence is inappropriate.

The judgment of the trial court is affirmed.

VAIDIK, J., and BARNES, J., concur.