## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2020, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sebastian S. Smith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 19, 2020 <br><br> Court of Appeals Case No. 19A-CR-2039 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Sean M. Persin, Judge <br><br> Trial Court Cause No. 79C01-1609-F2-28 |

**Crone, Judge.**

## Case Summary

[1]     Sebastian S. Smith shot and seriously injured Brendon Firth during an armed robbery. A jury found Smith guilty on six felony counts and 3 misdemeanor counts. The trial court entered judgment of conviction only for one count of level 2 felony robbery resulting in serious bodily injury and entered an enhanced sentence based upon Smith's use of a firearm during the robbery. Smith now appeals asserting that the trial court abused its discretion in excluding certain evidence, that his conviction and sentence enhancement violate double jeopardy principles, and that his sentence is inappropriate. The State cross-appeals urging that remand for amendment of the sentencing order and abstract of judgment is necessary to provide for consecutive sentencing with a term of imprisonment imposed in another county. We disagree with Smith but agree with the State. Accordingly, we affirm Smith's conviction and sentence, but remand for amendment of the sentencing order and abstract of judgment.

## Facts and Procedural History

[2]     The evidence most favorable to Smith's conviction reveals that on August 10, 2016, Smith, Tre'velle Young, and some other individuals were at Smith's residence smoking "[w]eed and some other stuff," and discussing robbing a drug dealer, Ryan Wall, who lived nearby. Tr. Vol. 2 at 108. Smith and Young later went to Wall's apartment under the pretext of buying drugs in order to "feel the place out." *Id*. Wall, his girlfriend, and two of Wall's friends, one of who was Brendon Firth, were present. While at Wall's apartment, Smith

purchased Xanax from Wall and spoke to him about the possibility of selling him a television. Smith told Wall that he would return later with the television.

[3] Smith and Young went back to Smith's residence and planned how the robbery would take place. They then returned to Wall's apartment with a television. The television sale was just a "sham" to get back into Wall's apartment. *Id*. at 113. As Wall was checking to see if the television worked, Smith instructed Young to go down to the car to retrieve "the remote." *Id*. at 80. This was "code" instructing Young to retrieve a gun from the car. *Id*. at 145. After Young returned with a gun, Smith pulled out his handgun and pointed it around the room at the people. Smith yelled at Wall, "Where is the sh*t at?" and ordered Wall to give him "everything [he] had." *Id*. at 94, 171. Firth stood up, pulled out a knife, and stepped toward Smith telling him that he "wasn't getting anything from anyone." *Id*. at 171. Wall told Firth that they should just comply with Smith's demands and "giv[e] him everything[,]" and Wall tossed a Crown Royal bag full of pills onto the coffee table toward Smith. *Id*. Smith looked at Wall, and back at Firth, and then shot Firth in the chest. After shooting Firth, Smith grabbed the bag full of pills, threw it to Young, and ran out of the apartment. Firth suffered life-threatening injuries as a result of the gunshot.

[4] The State initially charged Smith with one count of level 2 felony robbery resulting in serious bodily injury. The State subsequently added charges for level 3 felony conspiracy to commit robbery, level 3 felony criminal confinement, class A misdemeanor theft, level 3 felony battery, two counts of

level 5 felony battery, class A misdemeanor carrying a handgun without a license, and level 5 felony carrying a handgun without a license. The State also requested a sentence enhancement due to Smith's use of a firearm during the commission of his offenses. In September 2018, the State also added one count of level 1 felony attempted murder.

A jury trial was held in June 2019. The jury found Smith not guilty of attempted murder, but guilty on all other counts. The trial court entered judgment of conviction solely on the level 2 robbery count and found that the State had proved the elements of the use-of-a-firearm sentence enhancement beyond a reasonable doubt. The trial court sentenced Smith to twenty-five years for the level 2 felony, enhanced by fifteen years for the use of a firearm, with thirty-five years executed and five years suspended to probation. This appeal ensued. We will provide additional facts in our discussion when necessary.

## Discussion and Decision

### Section 1—The trial court did not abuse its discretion in excluding certain evidence.

Smith first contends that the trial court abused its discretion in excluding certain evidence. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Johnson v. State*, 38 N.E.3d 658, 660-61 (Ind. Ct. App. 2015)*, trans denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* at 661. Even if

the trial court's decision was an abuse of discretion, we will not reverse if the admission or exclusion constituted harmless error. *Id.*

[7] Although Smith attempted to serve Wall with several subpoenas to appear at trial, Wall failed to appear as a witness. During trial, Smith sought to elicit testimony from a police detective, over the State's objection, that on the night of the robbery, Wall told the detective that Smith and Firth had engaged in a struggle prior to the shooting. Smith claimed that Wall's out-of-court statement supported his claim of self-defense, and was admissible pursuant to the excited utterance exception to the hearsay rule. The trial court excluded the evidence as inadmissible.

[8] "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). As a general rule, hearsay evidence is inadmissible. Ind. Evidence Rule 802. One exception to the hearsay rule is the "excited utterance" exception contained in Evidence Rule 803(2). This rule provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the hearsay rule, even if the declarant is available as a witness. Ind. Evidence Rule 803(2). In order for a hearsay statement to be admitted as an excited utterance, three elements must be present: (1) a startling event has occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Boatner v. State*, 934 N.E.2d 184, 186-87 (Ind. Ct. App. 2010). "This is not a

mechanical test, and the admissibility of an allegedly excited utterance turns on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications." *Id*. "The heart of the inquiry is whether the declarant was incapable of thoughtful reflection." *Id*. (citation omitted). While the amount of time that has passed is not dispositive, "a statement that is made long after the startling event is usually less likely to be an excited utterance." *Id*.

[9] Here, the record does not support a claim that Wall's statement "was inherently reliable" because he was "under the stress of the event" and therefore "unlikely to make deliberate falsifications." *See id*. Smith vaguely asserts that the statement was made "shortly" after the shooting, Appellant's Br. at 12, but the record is unclear as to exactly when Wall spoke to the detective.[1] The State emphasized that the record indicated that Wall "spoke to multiple officers" well before he made the statement in question, and there was no evidence that Wall "was under the stress of the event still" when speaking to the detective. Tr. Vol. 3 at 108. Additionally, the record indicates that Wall, a known drug dealer, and the other witnesses present deliberately lied to and concealed evidence from the officers who arrived on the scene within minutes of the shooting. This cuts against any assertion that Wall was incapable of thoughtful reflection and unlikely to make deliberate falsifications in his subsequent statement. Under

---

[1] Smith's attorney stated that he believed the statement was made "within an hour or two" of the shooting, but he admitted he was unsure. Tr. Vol. 3 at 108.

the circumstances, we cannot say that the trial court abused its discretion in excluding Wall's out-of-court statement as inadmissible hearsay.

[10] In any event, we agree with the State that any error in the exclusion of Wall's statement was harmless at most. Errors in the exclusion of evidence are considered harmless unless they affect the substantial rights of a party. *Whiteside v. State*, 853 N.E.2d 1021, 1025 (Ind. Ct. App. 2006). To determine whether an error in the exclusion of evidence affected a party's substantial rights, we assess the probable impact of the evidence on the jury. *Id.* Smith sought to introduce Wall's statement regarding a struggle with Firth to support his claim of self-defense to the charge of attempted murder, for which he was acquitted. This self-defense theory had no bearing on his conviction for robbery resulting in bodily injury.[2] Accordingly, Smith cannot demonstrate that any error in the exclusion of Wall's out-of-court statement affected his substantial rights.

## Section 2 – Smith's robbery conviction and sentencing enhancement do not violate double jeopardy principles.

[11] Next, Smith argues that his conviction for level 2 felony robbery and the use-of-a-firearm sentence enhancement attached to that conviction violate Indiana's double jeopardy principles. We review questions of double jeopardy de novo, giving no consideration to the trial court's decision below. *Goldsberry v. State*,

---

[2] Smith's theory of defense regarding the robbery was that Young was the perpetrator of, and possessed the requisite mens rea for, the robbery, and that Smith was essentially at the wrong place at the wrong time. Tr. Vol. 3 at 160, 171-73.

821 N.E.2d 447, 458 (Ind. Ct. App. 2005). Article 1, Section 14 of the Indiana Constitution provides: "No person shall be put in jeopardy twice for the same offense." This provision was intended to "prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Under *Richardson*, "two or more offenses are the same offense ... if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*.

[12] While *Richardson* is aimed primarily at multiple convictions, our supreme court has recognized a series of rules of statutory construction and common law that supplements the constitutional protections afforded by the Indiana Double Jeopardy Clause. *Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003) (citing *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)). These rules prohibit conviction and punishment "for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring). The court has explained that claims of multiple enhancements require statutory interpretation, and the crux of these cases revolves around what, if any, legislative direction has been given. *Nicoson v. State*, 938 N.E.2d

660, 662-63 (Ind.2010).[3] In other words, multiple enhancements are permissible if the legislature clearly intends it to be so. *See id*.

[13] Smith was convicted of robbery resulting in serious bodily injury. He argues that the "serious bodily injury element" of his offense "was caused by and as a direct result of use of a firearm" during the crime. Appellant's Br. at 16. Accordingly, he maintains that the firearm sentence enhancement was imposed for "the very same behavior or harm" that supported his conviction for robbery resulting in serious bodily injury, and thus he claims that the sentence enhancement violates double jeopardy principles and must be set aside. *Id.*

[14] Our supreme court's decision in *Nicoson* is instructive here. In *Nicoson*, the defendant was convicted of criminal confinement as a class B felony because he was armed with a deadly weapon. *Nicoson*, 938 N.E.2d 660, 662-63. The trial court attached an additional fixed five-year term to his sentence pursuant to Indiana's Firearm Enhancement Statute, Indiana Code Section 35-50-2-11, because the defendant "used" a firearm while committing his offense. *Id.* at 661. That section provides that upon proof beyond a reasonable doubt "that

---

[3] Another panel of this Court has specifically determined that firearm sentencing enhancements do not implicate double jeopardy. Specifically, the panel in *Cooper v. State*, 940 N.E.2d 1210 (Ind. Ct. App. 2011), *trans. denied*, noted that several jurisdictions have concluded that firearm sentencing enhancements similar to ours do not raise double jeopardy concerns because the enhancement is merely a cumulative punishment rather than a separate offense. *Id.* at 1215 (collecting cases). The *Cooper* panel agreed with those jurisdictions in recognizing that sentencing enhancements are not offenses for double jeopardy purposes. *Id.* at 1217. While we acknowledge the general principle that sentencing enhancements do not constitute separate offenses, controlling precedent of our supreme court directs that we must still consider whether the firearm sentencing enhancement, as applied here, runs afoul of Indiana's supplemental prohibition "against double enhancements 'absent explicit legislative direction.'" *Nicoson,* 938 N.E.2d at 663.

the person knowingly or intentionally used a firearm in the commission of the offense under subsection (d), the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years." Ind. Code § 35-50-2-11. The *Nicoson* court determined, among other things, that the use-of-a-firearm sentence enhancement did not run afoul of double jeopardy principles. *Id*. at 661, 662-63, 665.

[15] In reaching that result, the court emphasized that

> [t]he "extra" five years about which Nicoson complains is not part of these provisions in the confinement statutes that authorize higher classes of felonies to be charged. Rather, it appears in the part of the Code on penalties. The section at issue authorizes an additional fixed sentence for the underlying offense where a firearm is used.
>
> ....
>
> Here, the State initially needed to prove only that Nicoson committed confinement while armed with a deadly weapon. Ind. Code § 35-42-3-3. To apply the additional fixed five-year term the statute requires the State to prove Nicoson "used" a firearm in commission of his offense. Ind. Code § 35-50-2-11. The record clearly reveals that Nicoson was not only armed with a deadly weapon, but that he used the firearm—firing into the air, ordering the victims from the vehicle with it, and firing at the victims' vehicle as they drove away.

*Id*. at 664, 665.

[16]     As in *Nicoson*, the sentence enhancement about which Smith complains does not concern, in any way, an elevation of a statutory offense to a higher class of felony. The sentence enhancement that applies to Smith's use of a firearm in the commission of his offense is embodied in the penalties provision of the Indiana Code in which the legislature has specifically provided a harsher penalty based on the use of a firearm. The legislature's intent is clear that certain criminal offenses committed with firearms, including those felonies resulting in death or serious bodily injury, are to receive additional punishment. Ind. Code § 35-50-2-11(b)(1).

[17]     Moreover, Smith was charged with the crime of robbery as a level 2 felony. An individual commits that offense if he or she knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person, or by putting any person in fear, and "it results in serious bodily injury to any person other than a defendant." Ind. Code § 35-42-5-1. Proof of that offense did not require any showing that Smith used a weapon, and the jury was not required to determine that Smith used a firearm in the commission of the underlying offense.

[18]     In other words, Smith was convicted of a single offense, and only one sentence enhancement was imposed as a result of his use of the firearm in the commission of the crime. Thus, we are not concerned with multiple enhancements. Contrary to Smith's suggestion, it is of no moment that his use of a firearm caused the serious bodily injury relied upon for both the underlying offense and the enhancement. If the legislature intended that offenses resulting

in serious bodily injury alleged to have been committed with a firearm were to be excepted from the use-of-a-firearm sentence enhancement, it could have drafted the statute to reflect that intent. Instead, the legislature specifically included all felonies "under IC 35-42" that result in "serious bodily injury." Ind. Code § 35-50-2-11. "[T]he inclusion of that requirement renders it virtually certain that the legislature would have foreseen that many of those injuries would be inflicted by the use of firearms." *Cooper v. State*, 940 N.E.2d 1210, 1217 (Ind. Ct. App. 2011), *trans. denied*. For the foregoing reasons, we conclude that no double jeopardy violation occurred, and we reject Smith's contention that his sentence enhancement must be set aside.

## Section 3 – Smith had not met his burden to demonstrate that his sentence is inappropriate.

[19] Smith finally requests that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as

inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. "The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[20] Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Smith was convicted of level 2 felony robbery resulting in serious bodily injury, and he was found to have knowingly or intentionally used a firearm during the commission of his offense. The sentencing range for a level 2 felony is between ten and thirty years, with an advisory sentence of seventeen and a half years. Ind. Code § 35-50-2-4.5. If a person knowingly or intentionally uses a firearm during the commission of certain offenses, the trial court may impose an additional fixed term of imprisonment between five and twenty years. Ind. Code § 35-50-2-11. The trial court here imposed a twenty-five-year sentence for Smith's robbery conviction, enhanced by fifteen years for his use of a firearm, resulting in an aggregate sentence of forty years (thirty-five years executed and five years suspended to probation), which was well below the maximum fifty-year allowable sentence.

[21] When reviewing the nature of the offense, this Court considers "the details and circumstances of the commission of the offense." *Washington v. State*, 940

N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. Smith urges that, although any robbery is a serious offense, the current robbery was not so egregious as to justify the sentence imposed. We disagree. There was evidence in the record that not only was Smith an active participant in pointing a loaded gun at a group of people, placing them in fear, and taking property, but he also planned and conspired to commit this crime in advance. Indeed, there was evidence to suggest that Smith was the mastermind of this drug heist gone horribly wrong. It is disingenuous to suggest that Smith was unaware that committing an armed robbery of a known drug dealer and his friends was not likely to result in an escalation of violence, namely, the serious bodily injury suffered by Firth. The details and circumstances of the commission of this offense do not persuade us that a sentence reduction is warranted.

[22] Turning to Smith's character, we note that the character of the offender is found in what we learn of his life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in that assessment is a review of an offender's criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Smith has an extensive criminal history beginning as a juvenile offender when he committed grand theft in Florida. At the young age of thirty, he had already amassed multiple felony convictions (theft, auto theft, possession of methamphetamine, possession of marijuana with a prior conviction, burglary) and seven misdemeanor convictions. As noted by the trial court, Smith's daily drug use (heroin, methamphetamine, painkillers) has unfortunately "led to a life of crime," and despite numerous arrests,

convictions, and opportunities at probation and rehabilitation, there has been "just no compliance anywhere." Tr. Vol. 4 at 25. Smith has demonstrated utter "disdain for the court," failing to appear before the court when ordered at least sixteen times, and he has just continued to do "whatever the heck [he] wanted." *Id*. at 25-26. Indeed, Smith committed the current offense shortly after release on his own recognizance from the Benton County Jail, where he was being held on pending burglary and habitual offender charges. Nothing we have learned about Smith's character persuades us that the sentence imposed by the trial court should be reduced. Smith has not met his burden to demonstrate that his sentence is inappropriate in light of the nature of his offense or his character.

## Section 4 – Remand is necessary for the trial court to correct its sentencing order.

[23] The State cross-appeals and asserts that remand is necessary for the trial court to correct its sentencing order. Specifically, the State points out that the order does not address the fact that Smith committed the instant offense while released on his own recognizance during the pendency of his Benton County case, cause number 04C01-1512-F4-229, and that pursuant to statute, the sentences imposed in both causes must be ordered to run consecutively. Indiana Code Section 35-50-1-2 provides in relevant part:

> (e) If, after being arrested for one (1) crime, a person commits another crime:
>
> (1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime; or

> (2) while the person is released:
>    (A) upon the person's own recognizance; or
>    (B) on bond;
>
> the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

[24] The record indicates that Smith committed the current crime while released on his own recognizance from the Benton County Jail where he had been held on burglary charges. Accordingly, pursuant to statute, the terms of imprisonment for the current crime and his Benton County crime shall be served consecutively.[4] Therefore, we remand with instructions for the trial court to correct the sentencing order and abstract of judgment to reflect that the terms of imprisonment for the current conviction and the Benton County conviction shall be served consecutively. The trial court's judgment of conviction and sentence is affirmed in all other respects.

[25] Affirmed and remanded.

Bailey, J., and Altice, J., concur.

---

[4] At the time of sentencing, Smith had already been convicted of level 4 felony burglary and found to be a habitual offender in the Benton County cause, and was serving the imposed fourteen-year executed sentence in the Department of Correction.