## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 02 2020, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alan Ocampo,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 2, 2020<br><br>Court of Appeals Case No.<br>20A-CR-584<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1912-F1-13 |

**Crone, Judge.**

# Case Summary

[1] After a trial, the jury found Alan Ocampo guilty of numerous offenses, including level 5 felony battery by means of a deadly weapon and level 5 felony battery resulting in serious bodily injury. The trial court found that Ocampo was eligible for a sentencing enhancement due to his use of a firearm in the commission of a felony. At the sentencing hearing, the trial court vacated the conviction for battery by means of a deadly weapon on double jeopardy grounds and enhanced the sentence on the conviction for battery resulting in serious bodily injury by ten years. Ocampo now appeals, arguing that the trial court should have vacated the other battery conviction instead, and that this would require vacation of the sentencing enhancement. He also argues that the trial court committed fundamental error in instructing the jury. We find no merit in Ocampo's arguments and affirm his convictions and sentence, but we remand for correction of technical errors in the sentencing order.

# Facts and Procedural History

[2] Between March and July 2018, Brooklyn Frye was romantically involved with Taiwon Evans. Frye then started dating Ocampo. In February 2019, they were "going through a hard time[.]" Tr. Vol. 2 at 122. On the night of February 23, Frye and Evans were talking in the front seat of Evans's Pontiac sedan, which was parked facing the street in the driveway of Frye's sister's boyfriend's house in Lafayette. Ocampo pulled into the driveway in his Camaro, got out of the vehicle, and started arguing with Frye, who was in the Pontiac's passenger seat. Frye got out of the Pontiac and started walking toward the house. Ocampo

went back to his Camaro and retrieved a silver Taurus revolver. He fired a shot into the air, approached the passenger side of the Pontiac, and fired another shot into the car. The bullet penetrated the center armrest, struck Evans in the right hip, fractured his femur, and lodged in his left hip. Evans, who was unarmed, got out of the car and ran to the nearby home of a friend.

[3] A man who lived across the street from the shooting heard the gunshots and looked out the window. He saw Ocampo holding the revolver and heard him yell, "[T]hat's what you get bitch." *Id*. at 149. Ocampo got into the Pontiac and crashed into the man's mailbox. He then returned to the driveway. Frye's sister, who was outside her boyfriend's house, saw Ocampo holding the revolver. Ocampo got into his Camaro and drove away.

[4] A police officer responding to a call about the shooting saw the Camaro and attempted to initiate a traffic stop. Ocampo continued driving, and during the pursuit the officer "observed a silver object tumble off the car and into the roadway." *Id*. at 212. Ocampo eventually stopped his vehicle and was taken into custody by the pursuing officer and two other officers. Ocampo told one of the officers "that that guy […] shot first" and "broke his taillight." *Id*. at 214. At police headquarters, during an interview with another officer, Ocampo claimed that Evans "got into a physical altercation with him, which resulted in him being pushed up against the back of the [Camaro], which resulted in […] the [taillight] being broken." Tr. Vol. 3 at 88. The taillight was not broken, and there was no "disruption" of the dirt covering the back of the Camaro that "one would expect to see" after a "struggle[.]" *Id*. at 89.

[5] Inside the Camaro, officers found a black Ruger handgun that had been reported stolen in Indianapolis. Ocampo's DNA was found on the handgun, and Evans was excluded as a contributor to the second DNA profile found on the weapon. The day after the shooting, Ocampo's Taurus revolver was found on the road where it had fallen during the police pursuit. The cylinder contained three live rounds and two spent rounds. Ocampo's DNA was found on the revolver, and Evans was excluded as a contributor to the second DNA profile found on the weapon. On the rear floorboard of Evans's Pontiac, police found a fragment of a bullet that was determined to have been fired from Ocampo's Taurus revolver.

[6] The State charged Ocampo with level 1 felony attempted murder, level 5 felony battery by means of a deadly weapon, level 5 felony battery resulting in serious bodily injury, level 5 felony criminal recklessness, two counts of level 6 felony pointing a firearm (at Evans and Frye's sister), level 6 felony resisting law enforcement, level 6 felony theft, level 6 felony obstruction of justice, class B misdemeanor unauthorized entry of a motor vehicle, class A infraction driving while suspended, and a sentencing enhancement for using a firearm during the commission of a felony. At trial, Ocampo claimed self-defense but did not testify. The trial court entered a directed verdict on the pointing-a-firearm count as to Frye's sister. The jury found Ocampo not guilty of attempted murder and theft and guilty of the remaining charges; the court entered judgment of conviction on those counts. Ocampo waived jury trial for the enhancement phase; the court found that he had a prior driving-while-

suspended conviction, which elevated his class A infraction to a class A misdemeanor, and also found that he used a firearm in the commission of a felony that resulted in death or serious bodily injury, which made him eligible for the sentencing enhancement.

[7] At the sentencing hearing, the trial court vacated the convictions for battery by means of a deadly weapon, criminal recklessness, and pointing a firearm due to double jeopardy concerns. The court imposed an aggregate sentence of nineteen years, including five years for the remaining battery conviction plus ten years for the firearm enhancement. Ocampo now appeals. Additional facts will be provided below.

## Discussion and Decision

## Section 1 – Ocampo has failed to demonstrate that the trial court erred in vacating his conviction for battery by means of a deadly weapon, but we agree with the State that the sentencing order should be corrected.

[8] Ocampo's sentencing enhancement is based on Indiana Code Section 35-50-2-11, which reads in pertinent part as follows:

(b) As used in this section, "offense" means:

(1) a felony under IC 35-42 that resulted in death or serious bodily injury;

….

(d) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.

….

(g) If the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense under subsection (d), the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years.

[9]     At the sentencing hearing, a consensus was reached that one of Ocampo's battery convictions had to be vacated due to double jeopardy concerns and that the sentencing enhancement could not be applied to the conviction for battery by means of a deadly weapon because it would result in an impermissible "double enhancement." *See, e.g.*, *Nicoson v. State*, 938 N.E.2d 660, 662-65 (Ind. 2010) (addressing double-enhancement claim).  Ocampo does not challenge this determination on appeal, and we express no opinion on it.  He does contend that because Indiana Code Section 35-50-2-11 does not specify which battery conviction should be vacated, we should apply "the Rule of Lenity[,]" which "should result in the conclusion" that the conviction for battery resulting in serious bodily injury should have been vacated instead, and thus the sentencing enhancement should also be vacated.  Appellant's Br. at 19-20.

[10]     We disagree. The rule of lenity applies to ambiguous statutes, *Cook v. State*, 143 N.E.3d 1018, 1023 (Ind. Ct. App. 2020), *trans. denied*, and Indiana Code Section 35-50-2-11 is merely silent, not ambiguous, on this point; consequently, the rule is inapplicable.[1] It is well settled that where, as here, a double jeopardy violation may not be remedied by reducing either conviction to a less serious form of the same offense, the conviction with the less severe penal consequences must be vacated. *Phillips v. State*, 25 N.E.3d 1284, 1292 (Ind. Ct. App. 2015). In this case, the conviction with the less severe penal consequences is the one for battery by means of a deadly weapon, assuming (as Ocampo does) that it is not subject to the sentencing enhancement. Ocampo has failed to demonstrate that the trial court erred in vacating that conviction.[2]

[11]     The State points out that the sentencing order incorrectly labels the firearm enhancement as a "Habitual Offender Sentencing Enhancement" that runs "consecutive" to the battery sentence. Appealed Order at 3; *cf. Cooper v. State*, 940 N.E.2d 1210, 1215 (Ind. Ct. App. 2011) (explaining that a firearm enhancement is an additional penalty and not a separate offense), *trans. denied*. The State suggests, and we agree, that remand is "appropriate to correct these

---

[1] The rule of lenity "requires interpreting [a criminal] statute in the defendant's favor as far as the language can reasonably support." *Cook*, 143 N.E.3d at 1023. Because Indiana Code Section 35-50-2-11 says nothing about the issue at hand, there is nothing to interpret.

[2] The double-jeopardy analysis at the sentencing hearing and in Ocampo's appellate brief, as well as in *Phillips*, is based either implicitly or explicitly on *Richardson v. State*, 717 N.E.2d 32 (Ind. 1998), which was recently overruled in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020). *Wadle* was issued almost three weeks before Ocampo filed his brief, but he does not cite it and thus does not argue that it would apply retroactively and require a different result.

technical errors, although they do not have any impact on the length or validity of [Ocampo's] sentence." Appellee's Br. at 7 n.2.

## Section 2 – Ocampo has failed to demonstrate that the trial court committed fundamental error in instructing the jury.

[12] At trial, the court gave the following final instruction to the jury:

> The flight of a person immediately after the commission of the crime with which he is charged, if there was such flight, is a circumstance which may be considered by you in connection with all the other evidence to aid you in determining his guilt or innocence.

Tr. Vol. 3 at 153. Ocampo did not object to this instruction. On appeal, he contends that the trial court erred in giving it. Because he failed to object at trial, he must establish fundamental error, that is, an error that either "makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). "Fundamental error will be found only in egregious circumstances." *Harbert v. State*, 51 N.E.3d 267, 277 (Ind. Ct. App. 2016), *trans. denied*.

[13] Those circumstances are not present here. In *Dill v. State*, our supreme court held that a similar instruction regarding flight should not have been given because it was confusing, unduly emphasized specific evidence, and was misleading. 741 N.E.2d 1230, 1233 (Ind. 2001). But the court observed that "[e]rrors in the giving or refusing of instructions are harmless where a

conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Id*. Here, the State presented overwhelming evidence that Ocampo committed the crimes that he was ultimately convicted of; the only question was whether he acted in self-defense.[3] Ocampo told police that Evans shot at him first, fought with him at the rear of the Camaro, and broke the taillight; no evidence supports this claim. The jury instruction did not make a fair trial impossible or blatantly violate due process principles. Therefore, we affirm Ocampo's convictions and sentence.

[14] Affirmed and remanded.

Robb, J., and Brown, J., concur.

---

[3] Ocampo's counsel conceded as much in his closing argument. Tr. Vol. 3 at 120-33.